IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> MICHAEL WATKINS HAYER | Case No.  3:22-mj-23 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Robinson N. Blake, being first duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION

**A.   Purpose of Affidavit**

1. I make this affidavit in support of a criminal complaint and an arrest warrant charging MICHAEL WATKINS HAYER with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

**B.   Agent Experience**

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March of 2009. I am currently assigned to the Richmond Division of the FBI, Charlottesville Resident Agency. My principal duties include the investigation of various criminal violations, to include violent crime, violent gangs, and illegal drugs.

3. I am a federal law enforcement officer under applicable provisions of the United States Code under Rule 41(a) of the Federal Rules of Criminal Procedure. I have received training in, and have experience in, the enforcement of the laws of the United States, including the

preparation and presentation of search warrants and arrest warrants, and in executing court-ordered search warrants and arrest warrants. I have participated in investigations of drug dealers, including matters involving drug trafficking conspiracies extending across multiple districts. These investigations have involved the use of undercover officers, confidential informants, physical surveillance, electronic surveillance, and investigative interviews, which have led to the execution of search warrants and arrest warrants at both the state and federal level.

4. In addition to using the aforementioned investigative techniques, during these investigations, I also have analyzed information from traditional record sources, such as telephone toll and subscriber records, as well as non-traditional record sources, such as the informal ledgers routinely maintained by drug traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources. I have also gained expertise in the identification and collection of drug and non-drug evidence, and the analysis and the interpretation of recorded conversations. Additionally, I have spoken with other experienced law enforcement officers and cooperating individuals about the packaging and preparation of drugs, methods of operation, and security measures employed by drug traffickers.

5. Through my involvement in drug investigations, discussions with other law enforcement personnel, and discussions with confidential informants, I have become familiar with the methods used by drug traffickers to import, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. I have participated in one federal investigation that employed court-authorized wire interceptions in narcotics and/or money laundering investigations. During the wiretap investigation, I monitored and summarized drug-related conversations. This experience, as well as others, have allowed me to gain experience understanding coded communications and methods used by drug traffickers.

    C.    **Sources of Information**

6. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Further, my interpretations and explanations of the significance of certain events, records, and statements discussed herein may evolve or change as the investigation progresses and/or new information is discovered. When coded language or symbols are described or used in this Affidavit, I described my understanding of the coded language or symbols in parentheses based on my training, experience, and conversations with other law enforcement officers. This Affidavit does not encompass all my knowledge regarding this event, but merely what I believe is necessary to establish probable cause.

## II.     APPLICABLE STATUTES

7. Based on set forth below, I assert there is probable cause to believe on April 16, 2022, HAYER violated the Target Offense listed below. The elements of these offenses are as follows:

   a. 21 U.S.C. § 841(a)(1), (b)(1)(C) (possession with intent to distribute a controlled substance): first, the defendant knowingly possessed Fentanyl, and, second, the defendant possessed it with the intent to distribute it to another person.

### III. PROBABLE CAUSE

#### A. Overview of Investigation

8. The Federal Bureau of Investigation (FBI) and the Greene County Sheriff's Office (GCSO) are conducting a criminal investigation of MICHAEL WATKINS HAYER ("MICHAEL") involving the Target Offense. Specifically, MICHAEL is suspected of being a significant supplier of heroin and/or Fentanyl in the Greene County, Virginia area. MICHAEL was arrested on state-charges related to narcotics possession and, while in custody, continued to coordinate and facilitate his drug trafficking through his son, CHRISTOPHER MICHAEL HAYER ("CHRISTOPHER"), and his girlfriend, FELICE MILLS ("MILLS").

9. In February of 2022, an individual identified as Victim 1, died of an overdose after ingesting what was believed to be heroin. A medical examination later confirmed Victim 1 died from acute Fentanyl toxicity. The FBI and GCSO's investigation has indicated MICHAEL supplied the Fentanyl to Victim 1 from which Victim 1 died.

#### B. Virginia State Police Traffic Stop of MICHAEL HAYER

10. On or about April 16, 2022, the Virginia State Police (VSP) conducted a traffic stop of a vehicle[1] in Greene County, Virginia, for speeding. MICHAEL was identified as the driver of the vehicle and CHRISTOPHER, his son, was identified as the passenger. After querying law enforcement databases, VSP determined MICHAEL's driver's license was revoked and MICHAEL was the subject of an arrest warrant for felony hit-and-run charges out of Farmville, Virginia. VSP subsequently arrested MICHAEL on the outstanding warrant. CHRISTOPHER was not arrested by VSP.

11. VSP conducted an inventory search of MICHAEL's vehicle following his arrest. The search located, among other items, approximately 95 grams of suspected methamphetamine,

approximately 50 grams of suspected Fentanyl, and three firearms.[2] Based on my training and experience, I know that these quantities of suspected narcotics are consistent with dealer – as opposed to exclusively user – based quantities. I also know that drug traffickers often possess firearms to protect their illegal contraband and/or proceeds derived from its sale.

12. In connection with the traffic stop and arrest, MICHAEL claimed ownership over the suspected narcotics and firearms. This traffic stop and arrest were captured on body worn camera footage.

13. Based on the evidence obtained from the search of MICHAEL's vehicle, MICHAEL was charged with multiple violations of Commonwealth of Virginia criminal statutes, including possession with intent to distribute a Schedule I or II drug, and possession of a firearm by a person in possession of a Schedule I or Schedule II drug, all felonies.

14. MICHAEL is currently incarcerated at the Central Virginia Regional Jail (CVRJ) in Orange, Virginia.

15. The location of the traffic stop and CVRJ are both within the Western District of Virginia.

16. Following MICHAEL's arrest described above, he placed numerous recorded calls from his inmate account at CVRJ. Many of MICHAEL's calls have been placed to two different numbers, namely (434) 623-8338 and (434) 414-5496. I, as well as other law enforcement officers, have reviewed some of these recorded calls. The content of the calls showed that MICHAEL was involved in drug trafficking prior to his arrest by VSP, and continued involvement in drug trafficking through his communications with CHRISTOPHER and MILLS.

17. On April 23, 2022, at approximately 10:35 a.m., MICHAEL placed a recorded jail call from his account to the (434) 623-8338 number. During the call, MICHAEL referred to the

---

[1] The suspected narcotics have not been tested by a laboratory. However, I believe they are likely narcotics based on presumptive NIK tests in the field.

called party as "CHRIS" and as his (MICHAEL's) "son." "CHRIS", in turn, referred to MICHAEL as "dad." Based on these calls, as well as other investigative information, I believe "CHRIS" is CHRISTOPHER MICHAEL HAYER and the user of the (434) 623-8338 number.

18. According to Greene County Sheriff's Office records, (434) 414-5496 is a telephone number used by MILLS. During multiple calls to this number, MICHAEL refers to the called party as "Felice," which is consistent with MILLS being the user of the (434) 414-5496 number.

### C. MICHAEL's Recorded Jail Calls Wherein He Directs Drug Trafficking

19. A review of some of the recorded jail calls show that MICHAEL has directed CHRISTOPHER and MILLS to engage in the drug trafficking operation while MICHAEL is incarcerated. Examples of such calls are included below and listed based on the date and time of the call from jail records. The participants have been identified based on their relationship as suspected users of the aforementioned numbers and/or the context of the calls. The calls are described in substance and pertinent part:

  a. <u>Call placed at approximately 3:59 p.m. on April 29, 2022 to (434) 414-5496</u>: MICHAEL told MILLS that she needed to travel "down south" in the near future, with as much money as she can, to pick up something MICHAEL referred to as "packages" and "bricks," from "AJ." MICHAEL described AJ as a "light-skinned" black male and told MILLS that he would give her specific directions to AJ's location. MICHAEL told MILLS that if she did this, she would be "set" financially. Toward the end of the call, MICHAEL told MILLS, "just get to fucking Carolina…and pay that motherfucking nigger and get me some goddamn drugs." (Agent note: Based on the context of the call, as well as others described below, I believe that MICHAEL was likely asking MILLS to pick up narcotics from his supplier, AJ, and the purpose of this instruction was to provide her with narcotics to make money in his absence, i.e. making her "set" financially.)

b. <u>Call placed at approximately 9:38 a.m. on April 30, 2022 to (434) 414-5496:</u> MILLS told MICHAEL she can travel to North Carolina to meet AJ tomorrow. MICHAEL tells MILLS she cannot go tomorrow because it is Sunday. (Agent note: I believe this call is significant because it indicates that MICHAEL and MILLS are planning for her to make the trip to meet with the supplier in the near future.)

c. <u>Call placed at approximately 10:14 a.m. on April 30, 2022 to (434) 623-8338:</u> MICHAEL told CHRISTOPHER he wanted CHRISTOPHER to meet his "connect," AJ, and that he (CHRISTOPHER) could make hundreds of thousands of dollars. MICHAEL also cautioned CHRISTOPHER not to use the drugs because "fentanyl…dope….methamphetamine ain't nothing to fuck with." MICHAEL suggested that CHRISTOPHER sell drugs for six months and then take a month-long break before selling again. (Agent note: This conversation is significant to the investigation for an number of reasons, including, not limited to: (1) it links MICHAEL's conversations about helping MILLS make money to a likely related conversation with CHRISTOPHER about the profitability of selling drugs; (2) it shows MICHAEL likely knows the risks of using the contraband product; and (3) it shows MICHAEL is likely coaching CHRISTOPHER on how to evade law enforcement detection while trafficking narcotics.)

d. <u>Call placed at approximately 6:15 p.m. on April 30, 2022 to (434) 414-5496:</u> MILLS told MICHAEL that she will travel "down south" tomorrow. MICHAEL instructed MILLS to go to Clarksville, Virginia, which is "thirty minutes away", and wait for his call. MICHAEL told MILLS to make sure that CHRISTOPHER meets her in Clarksville and that he wanted CHRISTOPHER to be there with her.

e. <u>Call placed at approximately 9:28 a.m. on May 1, 2022 to (434) 414-5496:</u> MILLS told MICHAEL the plan changed and CHRISTOPHER went down by himself

7

because he felt it was too dangerous for MILLS. MICHAEL told MILLS that he wants her and CHRISTOHPHER to both go next time, because he wants MILLS to meet AJ. (Agent note: This conversation is significant because it indicates that MICHAEL, MILLS, and CHRISTOPHER are likely co-conspirators in obtaining a resupply of narcotics from AJ, the suspected source.)

f. <u>Multiple calls placed between approximately 9:36 a.m. and 11:26 a.m. on May 1, 2022, to (434) 623-8338</u>: MICHAEL provided CHRISTOPHER with specific directions to AJ's house and instructed CHRISTOPHER to be armed with a pistol. MICHAEL also instructed CHRISTOPHER not to use the interstate and to watch the speed of his vehicle. CHRISTOPHER acknowledged that he had a firearm and informed MICHAEL that he (CHRISTOPHER) had approximately $3,500 to "play with." (Agent note: This call is significant because it indicates, among other things, that CHRISTOPHER likely intends to purchase distribution-level quantities based on the purchase price. I know from training and experience that $3,500 is consistent with the purchase of far more than user-quantities of controlled substances.)

g. <u>Call placed at approximately 10:43 a.m. on May 1, 2022 to (434) 414-5496</u>: MICHAEL informed MILLS that CHRISTOPHER was likely going to purchase seventeen "bricks" from AJ. MICHAEL informed MILLS that each "brick" consisted of fifty packs and instructed her to sell each pack for $8 each. MICHAEL further instructed her to take the proceeds from the sale of the 17 "bricks" and to "go back." MICHAEL also provided instruction to MILLS on how to maintain the "bricks," telling her that she should keep only two packs in her house at any time so that she can "flush them," and to bury the rest somewhere in the yard. MICHAEL also insisted MILLS never touch the packs without wearing gloves and to never use the packs. MICHAEL told MILLS that the packs she got would be gone in less than

    thirty days and that every month, she should be able to "go back." (Agent note: This call is significant because it indicates MICHAEL has experience maintaining and selling illegal drugs.)

h. <u>Call placed at approximately 1:13 p.m. on May 1, 2022 to the (434) 623-8338</u>: CHRISTOPHER informed MICHAEL that he (CHRISTOPHER) was on his way back from the suspected drug deal with AJ and that he was unsure of the amount he had in his possession. MICHAEL told CHRISTOPHER he should have 17 "bricks." MICHAEL told CHRISTOPHER that he should "turn that three into six, turn that six into 12, turn that 12 into 24." (Agent note: This call is significant because it indicates, among other things, that cutting or adulteration agents may be used in connection with the suspected drug trafficking. Based on my training and experience, I know that drug traffickers will often dilute narcotics before reselling them to increase their per-weight profitability.)

i. <u>Call placed at approximately 4:56 p.m. on May 1, 2022 to (434) 414-5496</u>: MICHAEL instructed MILLS and CHRISTOPHER to take two fifty packs, put gloves on, and "ride around to meet some people." MICHAEL provided names and locations of people he wanted MILLS to visit. During the call, CHRISTOPHER informs MICHAEL that he now has AJ's phone number. (Agent note: Based on my training and experience, I believe the individuals that MICHAEL wanted CHRISTOPHER and MILLS to visit were likely customers to purchase the obtained narcotics.)

**D.**    <u>**Knowledge, Training, And Experience Regarding Narcotics Trafficking**</u>

20.    Based upon the facts and circumstances described in the Affidavit for an arrest warrant, along with my training, experience, and consultation with other law enforcement agents experienced in investigations regarding manufacture, distribute, and possess with intent to

9

distribute controlled substances, I respectfully submit that there is probable cause to charge MICHAEL WATKINS HAYER with violation of the Target Offense.

## IV. REQUEST FOR SEALING

21. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## V. CONCLUSION

22. I submit that this Affidavit establishes probable cause for a warrant to arrest MICHAEL WATKINS HAYER of the Target Offense.

Respectfully submitted,

*s/Robinson N. Blake*
Robinson N. Blake, Special Agent
Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on this __21st__ day of June 2022.

_____
HONORABLE JOEL C. HOPPE
United States Magistrate Judge